85 F.3d 629
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Otis W. PLASSMAN and Joyce A. Plassman, Plaintiffs-Appellants,
v.
CITY OF WAUSEON, a Municipal Corporation; Perry Rupp,
Individually and as Receiver; Tom Hall, Zoning Inspector;
James Gamber, Fire Chief; Jerry G. Matheny, Mayor; and
Clair W. Clark, President of Council, Defendants-Appellees.
 No. 95-3736.
 United States Court of Appeals, Sixth Circuit.
 May 14, 1996.
 
 Before: MILBURN and BOGGS, Circuit Judges; and BORMAN,* District Judge.
 MILBURN, Circuit Judge.
 
 
 1
 Plaintiffs Otis W. Plassman and Joyce A. Plassman appeal the district court's grant of summary judgment in favor of defendants, Receiver Perry Rupp, in his individual and official capacities; City of Wauseon Zoning Inspector Tom Hall; Fire Chief James Gamber; Mayor Jerry G. Matheny; President of Wauseon City Council Clair W. Clark; and the City of Wauseon, Ohio, in this civil rights action brought under 42 U.S.C. § 1983. Plaintiffs allege that defendants violated their constitutional rights by destroying their property, which had been declared a nuisance. On appeal, the issues are (1) whether the district court erred in converting defendants' motions to dismiss plaintiffs' amended complaint under Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 12(b)(6) into motions for summary judgment; (2) whether the district court erred in dismissing, on the basis of res judicata, plaintiffs' claim that defendants' destruction of their property violated their due process rights; (3) whether the district court erred in dismissing plaintiffs' claim that defendants violated their First Amendment rights by seeking to enforce a court order in retaliation for the exercise of their right of access to the courts; and (4) whether the district court erred in dismissing plaintiffs' claims against Receiver Rupp. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On April 27, 1992, plaintiffs Otis and Joyce Plassman purchased property in Wauseon, Ohio. The property, commonly known as Kolb Feed Mill, is located at 135 Commercial Street in downtown Wauseon. Although defendants contend that plaintiffs used the property as a "junk yard," plaintiffs assert that they used the property as a "recycling facility." The Plassmans were issued citations for violating the City of Wauseon Zoning Code, the City of Wauseon Maintenance Code, State of Ohio and City of Wauseon Fire Codes, and the State of Ohio Basic Building Code. Plaintiffs were served with notice of these violations by the Ohio Department of Industrial Relations, the City of Wauseon Department of Zoning, Building, and Housing, and the City of Wauseon Fire Chief. Plaintiffs did not effect any form of administrative appeal with respect to these citations.
 
 
 3
 On November 18, 1992, the City of Wauseon filed an action in the Court of Common Pleas of Fulton County, Ohio, to have the property declared a nuisance and to enjoin further and continued violations of the various city and state codes. The Plassmans filed an answer pro se, and at a pretrial hearing, the court set a hearing date and advised the Plassmans of the necessity of obtaining counsel for that hearing. The Plassmans could not find an attorney to represent them at the hearing, and the court refused to grant a continuance. On March 18, 1993, the court entered judgment in favor of the City of Wauseon. The court found that the Plassmans' use of their property violated city zoning, maintenance, and fire codes and that the condition of the building on the property violated the state building code. The court further determined that because the Plassmans had not effected administrative appeals, they were estopped to deny that the violations existed.
 
 
 4
 The court's judgment ordered the Plassmans to remove all materials, recyclables, and junk from the property by May 3, 1993, and ordered them to submit to the Wauseon City law director a contract for either the repair or the demolition of the building on the property by June 1, 1993. The court further held that if the Plassmans failed to comply with its orders by the specified dates, the court would appoint a receiver who would be authorized to take charge of the premises and all personal property. The court's judgment further authorized the receiver to sell all of the personal property on the premises and to obtain a contract to repair or demolish the building.
 
 
 5
 The Plassmans appealed to the Court of Appeals for Fulton County, Ohio. In their appeal, they requested a stay of the trial court's March 18, 1993 judgment and challenged the court's judgment on various constitutional grounds. The appellate panel held a conference with the Plassmans' attorney at that time, James Hitchcock, and the Wauseon City law director, and the parties agreed that the stay would be granted provided that the Plassmans removed all of the junk on the property by June 20, 1993. However, the Plassmans did not remove the junk, and the stay was lifted. On February 25, 1994, the court of appeals affirmed the lower court's decision. The Plassmans sought leave to appeal to the Ohio Supreme Court, but the court denied jurisdiction.
 
 
 6
 On June 20, 1994, defendant Perry Rupp was appointed receiver, at the City's request, to abate the nuisance. Pursuant to the court judgment, Rupp seized all personal property on the premises, including several vehicles. Rupp hired salvage operators who sold the ferrous and non-ferrous materials to various dealers in used metals.
 
 
 7
 In a letter to the Plassmans' counsel dated July 27, 1994, Jeffrey Robinson, Wauseon City law director, stated that the City would be willing to allow the building on the property to remain standing if the Plassmans would comply with the directives of the State of Ohio by providing the City with plans for rehabilitation of the building from a certified engineer or architect and proof that a contract with a builder had been entered into that indicated that the building would be rehabilitated within a specified time frame. Robinson stated that if the Plassmans accomplished these things, the City would enter into a joint judgment entry that would stop the receiver from taking any further action.
 
 B.
 
 8
 On July 29, 1994, without taking any steps to accomplish the requirements stated in the letter, the Plassmans filed an action under 42 U.S.C. § 1983 in federal court, alleging constitutional violations and seeking a temporary restraining order to prevent Receiver Rupp from demolishing the building on plaintiffs' property. The Plassmans now claim that a city council meeting was held two days later, on August 1, 1994, at which the City changed its position from being willing to allow the building to stand if the Plassmans abated the nuisance to urging its demolition, as a result of their lawsuit against the City. The district court denied plaintiffs' motion for a temporary restraining order on August 3, 1994.
 
 
 9
 The Plassmans subsequently filed a motion in the Court of Common Pleas of Fulton County, Ohio, seeking to remove defendant Rupp as receiver and seeking a temporary restraining order to prevent their building's destruction. The court denied the motion on August 10, 1994. On October 17, 1994, the Ohio Court of Appeals held that the lower court's order was not final and dismissed the Plassmans' appeal sua sponte.
 
 
 10
 On August 17, 1994, the City of Wauseon, Zoning Inspector Tom Hall, Fire Chief James Gamber, Mayor Jerry G. Matheny, and the President of the City Council, Clair W. Clark (collectively referred to as "the City defendants") filed a motion to dismiss plaintiffs' complaint under Fed.R.Civ.P. 12(b)(6). Defendant Rupp also filed a motion to dismiss on September 30, 1994. On October 20, 1994, plaintiffs filed an amended complaint that added a claim against the City defendants that alleged that their decision to seek the demolition of the building on plaintiffs' property, after the City law director had stated that the City would not do so if plaintiffs complied with the terms of the state court's March 18, 1993 judgment, was motivated by plaintiffs' lawsuit against the City and constituted retaliation in violation of their First Amendment rights. Plaintiffs also sought various injunctions against further actions by defendants with regard to the property.
 
 
 11
 On February 9, 1995, the City defendants filed a Fed.R.Civ.P. 12(b)(6) motion to dismiss plaintiffs' amended complaint. Plaintiffs filed notices of depositions on February 17, 1995, and on April 6, 1995. On April 13, 1995, the district court converted defendants' motions to dismiss into motions for summary judgment and granted the motions. The building on plaintiffs' property was subsequently demolished. On April 28, 1995, plaintiffs filed a Fed.R.Civ.P. 59(e) motion to vacate judgment. The district court denied the motion on May 30, 1995, and this timely appeal followed.
 
 II.
 A.
 
 12
 Plaintiffs argue that the district court improperly converted defendants' motions to dismiss plaintiffs' amended complaint into motions for summary judgment. Plaintiffs assert that the district court erred by failing to provide plaintiffs with notice of its intention to treat the motions to dismiss as motions for summary judgment. Fed.R.Civ.P. 12(b) requires that "if matters outside the pleading are presented to and not excluded by the court" in a motion to dismiss under subsection (6), that motion "shall be treated as one for summary judgment." The rule also requires that such a motion be "disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56." See United Bhd. of Carpenters & Joiners of Am. v. Ohio Carpenters Health & Welfare Fund, 926 F.2d 550, 558 (6th Cir.1991) ("Where one party is likely to be surprised by the change of proceedings, notice is required.").
 
 
 13
 In this case, the district court found that plaintiffs had failed to state any claims in their amended complaint upon which relief could be granted. However, because the district court concluded that "all parties [had] refer[ed] to matters outside the pleadings (i.e. transcripts, letters, etc.)," J.A. 306, it held that defendants' motions to dismiss were actually motions for summary judgment. In their memoranda in support of and in opposition to the motions to dismiss, the parties refer to the proceedings in the state courts regarding this action and to correspondence between the parties regarding the property. Plaintiffs' amended complaint includes by reference all of the proceedings and correspondence discussed in the memoranda in support of and in opposition to the motions to dismiss. Moreover, any federal court may take judicial notice of the proceedings in other courts of record. Rodic v. Thistledown Racing Club, Inc., 615 F.2d 736, 738 (6th Cir.1980), cert. denied, 449 U.S. 996 (1980). Therefore, the parties did not refer to matters outside of the pleadings. See Song v. City of Elyria, 985 F.2d 840, 842 (6th Cir.1993) (holding that because the movants' attachment to their motion to dismiss did not rebut, challenge, or contradict anything in the plaintiffs' complaint, it did not convert the motion to dismiss into a motion for summary judgment); Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir.1994) (holding that documents whose contents are alleged in a complaint and whose authenticity is uncontested, but that are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss), cert. denied, 114 S.Ct. 2704 (1994); Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir.1993) (holding that documents attached to defendant's motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and are central to her claim).
 
 
 14
 Therefore, because the parties did not present matters outside of the pleadings to the district court and because the district court found that plaintiffs failed to state any claim upon which relief can be granted, we conclude that the district court erred by treating defendants' motions as motions for summary judgment. The district court's error is not the sort that warrants remand, however, for we may simply construe its order as a dismissal for failure to state a claim. See United Bhd. of Carpenters, 926 F.2d at 558 ("As an appellate court, we are not bound to adhere to the label attached to the trial court's disposition of the case.").
 
 B.
 
 15
 Next, plaintiffs argue that the district court erred in dismissing their claim that the City defendants' demolition of their property constituted a violation of their due process rights. We review de novo a district court's dismissal of a suit pursuant to Fed.R.Civ.P. 12(b)(6). Columbia Natural Resources, Inc. v. Tatum, 58 F.3d 1101, 1109 (6th Cir.1995), cert. denied, 116 S.Ct. 1041 (1996). On such a motion, "[t]he district court must construe the complaint in the light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtably can prove no set of facts in support of his claims that would entitle him to relief." Id. In Scheuer v. Rhodes, 416 U.S. 232 (1974), the Supreme Court explained:
 
 
 16
 When a federal court reviews the sufficiency of a complaint before the reception of any evidence ... its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.
 
 
 17
 Id. at 236. Thus, a district court may not grant a Rule 12(b)(6) motion merely because it does not believe the factual allegations of the complaint. Allard v. Weitzman (In re De Lorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir.1993).
 
 
 18
 Plaintiffs claim that demolition is a remedy of last resort that should be employed only when a building is declared a public nuisance and when destruction of the property is reasonably necessary to effectuate abatement of the nuisance. In plaintiffs' view, the city attorney's letter providing them an opportunity to repair the building before it was destroyed constitutes evidence that destruction of the building was not necessary. Therefore, they argue that the property's destruction violated due process. The district court held that this claim was fully litigated at the state level, and, therefore, the doctrine of res judicata barred its relitigation.
 
 
 19
 The rules of res judicata actually comprise two doctrines concerning the preclusive effect of a prior adjudication. The first is claim preclusion, or true res judicata, under which a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). The second doctrine, collateral estoppel or issue preclusion, "precludes relitigation of the same issue on a different cause of action between the same parties once a court decides an issue of fact or law necessary to its judgment." Duncan v. Peck, 752 F.2d 1135, 1138 (6th Cir.1985).
 
 
 20
 In determining the preclusive effect of a prior state court judgment, federal courts must give the same effect to the state court judgment that it would be given under the law of the state in which it was rendered. Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75 (1984). Ohio courts have consistently recognized and applied the doctrine of claim preclusion not only "to issues that could have been raised by the plaintiff in the prior proceeding but also to issues that could have been raised as defenses to the plaintiff's claim in the earlier case." City of Canton, Ohio v. Maynard, 766 F.2d 236, 238 (6th Cir.1985) (per curiam) (citing Johnson's Island, Inc. v. Board of Township Trustees, 431 N.E.2d 672, 674-75 (Ohio 1982)).
 
 
 21
 In order for res judicata to apply as a bar to a second lawsuit, that lawsuit must be between the same parties and involve the same cause of action. Norwood v. McDonald, 52 N.E.2d 67, 71 (Ohio 1943). The action in state court was between the City of Wauseon and the Plassmans. In the federal action, the Plassmans listed the names of the City defendants on their complaint, but they failed to specify whether they were suing the city officers in their official or their individual capacities. Where a complaint seeking damages against a city official fails to specify the capacity in which the individual is being sued, we treat the action as one brought against the official's office. See Wells v. Brown, 891 F.2d 591, 592 (6th Cir.1989). In addition, the Supreme Court has explained that an official capacity lawsuit should be treated as a suit against the government entity of which the officer is an agent. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Therefore, we conclude that there is an identity of parties with the prior state court proceeding. Thus, the only relevant question is whether the present claim involves the same cause of action as the earlier state case.
 
 
 22
 Under Ohio law, the proper way to determine whether two causes of action are the same is "to consider the facts necessary to sustain the claim." Duncan v. Peck, 752 F.2d at 1139. Applying this standard, we conclude that the cause of action in this case is the same as in the prior state court judgment. In both cases, at issue was the determination that the destruction of plaintiffs' property was a proper means to abate the nuisance.
 
 
 23
 Our determination is supported by City of Cincinnati ex rel. Crotty v. City of Cincinnati, 361 N.E.2d 1340 (Ohio 1977). In that case, citizens of Cincinnati sued the city, alleging that enforcement of the state fluoridation laws violated the First Amendment and the Equal Protection Clause. The Ohio Supreme Court held that the suit was barred under res judicata because the constitutional issues could have been raised as defenses in an earlier state court proceeding involving the enforcement of the fluoridation laws against Cincinnati. Similarly, in this case, the due process argument offered by plaintiffs is nothing more than a defense to the City's action for abatement and could have been raised in state court. Thus, we conclude that the district court in this case properly dismissed plaintiffs' due process claim.
 
 C.
 
 24
 Plaintiffs also argue that the district court erred in dismissing their claim that the City defendants violated their First Amendment rights by revoking their offer to allow plaintiffs an opportunity to repair the building on their property and instead seeking its destruction in retaliation after plaintiffs filed this action against the City defendants. It is well established that retaliation by a public official for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977); Graham v. National Collegiate Athletic Ass'n, 804 F.2d 953, 959 (6th Cir.1986); Smith v. Maschner, 899 F.2d 940, 948 (10th Cir.1990). One of the purposes of this rule is to prevent state officials from exercising their discretionary authority for retaliatory purposes.
 
 
 25
 In this case, the state court authorized the City to demolish the building on plaintiffs' property before plaintiffs filed their lawsuit against the City defendants. Thus, the City defendants did not exercise discretion in determining that the destruction of the building was an appropriate remedy to abate the nuisance. Therefore, their taking steps to enforce the court's judgment is not the type of retaliatory conduct that the rule stated above is intended to protect against. Accordingly, we hold that the district court did not err in finding that plaintiffs failed to state a claim upon which relief could be granted as to this issue.
 
 D.
 
 26
 Next, plaintiffs argue that the district court erred in dismissing their claim against Receiver Rupp on the basis of res judicata. The district court held that a prior action in state court barred plaintiffs' claims against Rupp. In that action, plaintiffs sought a temporary restraining order and to have a new receiver appointed, and the state court held that defendant Rupp's conduct had been reasonable and had not damaged plaintiffs. However, in order for res judicata to apply, there must have been a final judgment on the merits. Johnson's Island, Inc., 431 N.E.2d at 674. The Ohio Court of Appeals held that the lower court's order denying the Plassmans' motion to remove the receiver was not a final appealable order, and, therefore, the district court's application of res judicata was erroneous.
 
 
 27
 Defendant Rupp argues that we should uphold the district court's dismissal of plaintiffs' claims against him nonetheless because, he asserts, he is entitled to judicial immunity for his actions identified in plaintiffs' complaint. In Bush v. Rauch, 38 F.3d 842 (6th Cir.1994), we noted that "absolute judicial immunity has been extended to non-judicial officers who perform 'quasi-judicial' duties." Id. at 847. We explained that "[q]uasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." Id. To determine whether an official is entitled to judicial immunity, we apply a "functional" approach pursuant to which a court "looks to 'the nature of the function performed, not the identity of the actor who performed it.' " Buckley v. Fitzsimmons, 113 S.Ct. 2606, 2613 (1993) (quoting Forrester v. White, 484 U.S. 219, 229 (1988)).
 
 
 28
 In Bush, we held that a court administrator acted as an arm of the court by carrying out the orders of a referee and was thereby entitled to judicial immunity. We held, "[a]s other circuits have held, [that] enforcing or executing a court order is intrinsically associated with a judicial proceeding." Id., 38 F.3d at 847. In support of this holding, we explained:
 
 
 29
 [O]fficials must be permitted to rely upon a judge's findings and determinations to preserve the integrity of the court's authority and ability to function. It does not seem logical to grant immunity to a judge in making a judicial determination and then hold the official enforcing or relying on that determination liable for failing to question the judge's findings. This would result in the official second-guessing the judge who is primarily responsible for interpreting and applying the law.
 
 
 30
 Id. at 848. In Smith v. Martin, 542 F.2d 688, 690 (6th Cir.1976) (per curiam), cert. denied, 431 U.S. 905 (1977), we held that a court appointed receiver who did not act outside of his authority under court order or maliciously or corruptly was entitled to judicial immunity. Other circuits have also held that a receiver is entitled to judicial immunity if the challenged actions are taken in good faith and are within the scope of the authority granted to the receiver. See Davis v. Bayless, 70 F.3d 367, 373 (5th Cir.1995); New Alaska Dev. Corp. v. Guetschow, 869 F.2d 1298, 1304 (9th Cir.1989); Property Management & Invs., Inc. v. Lewis, 752 F.2d 599, 603-04 (11th Cir.1985); Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno, 547 F.2d 1, 3 (1st Cir.1976); Bradford Audio Corp. v. Pious, 392 F.2d 67, 72-73 (2d Cir.1968).
 
 
 31
 In their complaint, plaintiffs allege that defendant Rupp was negligent in seizing certain vehicles and other items on their property that plaintiffs could have removed, and in failing to minimize plaintiffs' losses when he sold plaintiffs' personal property and contracted to have the building on their property demolished. Plaintiffs allege that defendant Rupp did not protect their best interests because he had a contract with the City to remodel the City administration building.
 
 
 32
 We conclude that plaintiffs have failed to allege that defendant Rupp exceeded the scope of the authority granted him by the state court. In its March 18, 1993 judgment, the court authorized the receiver to sell all of the personal property on the premises and to obtain a contract for the repair or destruction of the building. Thus, the receiver's actions did not exceed the scope of the authority granted him by court order, and he is entitled to judicial immunity for executing the court's order. Accordingly, we uphold the district court's dismissal of plaintiffs' claims against defendant Rupp, albeit for reasons different from those relied on by the district court. See Foster v. Kassulke, 898 F.2d 1144, 1146 (6th Cir.1990).
 
 III.
 
 33
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Paul D. Borman, United States District Judge for the Eastern District of Michigan, sitting by designation